Okay, well, we'll wait a minute. Okay. Okay. Okay. Okay. Okay. The final case on the docket this morning is called, Mr. Thompson. May it please the court. My name is Russell Thompson, and I represent Adrian Beaman. This case raises the issue of whether police officers' involvement in the private repossession of Ms. Beaman's vehicle constituted intervention and aid transforming the private repossession into state action. Because the officers here held two illegal curbside courtrooms where they weighed the evidence, opined that Ms. Beaman was not the lawful owner of the vehicle, then advocated for Appelli's right to repossess the vehicle based on that ownership, and then ultimately arrested her when she refused to accept their improper verdicts, this intervention and aid transformed it into state action. Accordingly— Well, so maybe the police officers were acting as state actors. They almost always are. But you're not suing the police officers. I mean, I read the case law. There's two different issues. One is when the police officers become subject to suit under 1983 in the context of a private repossession. And that's really a lot of the law you're citing. But you're actually trying to sue the private actors, and they are— doesn't our case law require concerted action, a conspiracy, basically? No, Your Honor. It does not require a conspiracy. Conspiracy is one of the four or five different tests that have been offered. Okay. Let me ask you another. What case holds a private actor subject to state action in a repo case? What's your best case? That would be Menchaca v. Chrysler, the opinion of this Court. I thought they didn't hold them. They did not there. So my question is what case held private actors responsible that wasn't based on a conspiracy or concerted action theory? Well, if I could first point to Menchaca, if you don't mind, because that court—the differentiation between Menchaca and this court is that there was testimony there, and the district court did not believe Mr. Menchaca's testimony that they opined and said he doesn't have lawful ownership of the vehicle. But in its order, it said that we agree with the dissent's contention that police intervention and aid in this repossession by defendant Chrysler's agents would constitute state action. However, the testimony failed to show intervention and aid. So in Menchaca, this court essentially held that if the officers had actually told him, Mr. Menchaca, that he had to relinquish possession of the vehicle, that alone would have transformed it into state action. And that case there was deciding not the police officer's motion, but the motion to dismiss for lack of jurisdiction by Chrysler, the secured party in that instance. But courts across the country have held that a police officer's opining on lawful ownership of the vehicle would constitute intervention and aid. The District of New Mexico— So how is this different? There's a domestic incident at my house. Someone calls the police, and the victim enlists the police to help arrest the person doing the assault. I mean, this is police every day. Their job is to help private citizens when there's an altercation. It seems like every private person who calls up a police officer would be possibly subject to 1983. If there was essentially a taking, that might be a question. What do you mean a taking? Well, here they took the vehicle. They took Ms. Beeman's vehicle. It was ultimately repossessed. By itself, an officer merely showing up on the scene and arresting somebody for criminal activity alone would not be sufficient to constitute state action. Well, isn't that exactly what happened here even under her— I mean, she's driving the car off of the tow truck. Yes, Your Honor, and that in and of itself was the breach of the peace. And she runs over the tow driver. There's a dispute— And he calls the police. Wouldn't you? I mean, wouldn't I? Yes, Your Honor, I would have done exactly the same. However, what the police officers should have done when they showed up was either said that it was a civil matter, the repossession, or alternatively arrested her on the spot. But that's not what they did. Well, yeah, because they negotiated a deal so she wouldn't have to be arrested. I disagree, Your Honor. I don't think that they negotiated any deal. And that also excludes the two illegal curbside courts that happened before then where they weighed evidence and opined that she's not the lawful owner of the vehicle. That was where the intervention and aid came from. Well, let me—and I take that point for what it's worth, but also—oh, shoot, I forgot. I'm sorry. So going back to Menchaca, we believe that is the case that supports our case here because it was, again, directly on point. It was the same exact status of the case. It was a motion to dismiss for lack of jurisdiction under the identical statute, 42 U.S.C. 1983, and the court did all of the analysis there. The only difference is the court there found that the officers did not opine as to lawful ownership of the vehicle, and they actually left. Here, the first two officers showed up. They were aware— Well, speaking of Menchaca, I mean, again, we can all read the cases on our own, but I'm looking at page 512. It says—it's criticizing the dissent. It says, The dissent overlooks the fact that absent some form of concerted conduct on the part of the police officers, there was no jurisdiction to support claims against the other defendants, the private defendants. Yes, Your Honor, I agree. There needs to be some sort of joint action, but not to the level of conspiracy. Oh, okay, okay, no. For example— Okay, so you do think there needs to be concerted actions. Yes, Your Honor. In the U.S. v. Price— Well, what's the difference between concerted action and conspiracy? Conspiracy is just one of the different tests to determine joint action. So, for example, in U.S. v. Price, 383 U.S. 787, the Supreme Court said it is enough that he is a willful participant in joint activity with the state or its agents. This Court, in Baldwin v. Morgan, 251 F2D 780, said those who directly assist the admitted state agency in carrying out the unlawful action become a part of it and are subject to the sanction of 1983. You know, all that is predicated on unlawful conduct by state officials. That's what 1983 is all about, and I fail to see unlawful conduct on the part of the officers here. But apart from that, the question I meant to ask you a second ago was, why do you want to be in federal court as opposed to state court? Your Honor— Since you're just suing the private individuals. We are not just suing the private individuals. The problem was the police officers failed to turn over the body cam footage until— Excuse me, but the defendants listed here are all private individuals. Yes, Your Honor. The police officers failed to turn over the body cam footage until after the deadline to amend pleadings. So there's another action stayed pending this Court's decision in the district court currently against the individual officers. So there's two separate actions. Now, this one up on appeal, and the other one because the deadline to amend had passed against the officers. Let me give you a hypothetical. I call the police and say, I see someone stole my kid's bike. I see the kid down the street with it. That's my kid's bike. And they come and they take the bike away. And I enlisted their help, and they bring the bike back to my kid. I can be sued because I worked with the police to get this property back. And you would say, well, there was no due process hearing. The police did a curbside hearing to determine that was my kid's bike and not the person who stole it? Yes, Your Honor. I think that's improper for the officers to give it back. If I can explain... So you can't report stolen property? No, Your Honor. You can report it stolen, but then the property gets taken. It gets seized by the police, and it goes through the property hearing. Sergeant Galleon, one of the officers that later showed up, explained... So they can't just give it back to my kid? Exactly, because there's a dispute over stolen property, unfortunately, just as a matter of law that has to go through the property hearing dispute hearing. It's both explained in Sergeant Galleon's report and on the body cam footage, where she explains that if we report this as stolen, they're not getting it, we're taking it, and it's going to be nine months of hearing. And then she opines, you're not going to get it anyway. It's highly unlikely you're even going to win this at the hearing. And again, going back to what Sergeant Galleon said, this is after the first officers review the evidence and opine that she doesn't have lawful ownership. Again, that was wrong. She did have lawful ownership. Everything had been paid for the down payment. So the federal courts ought to be the forcible entry and detainer courts for all repossessions. Is that sort of your position? No, Your Honor. My position is that police officers, their sole duty is to do exactly what the officers in Menchaca did. So their sole duty here was to arrest her and take her to jail away from her kid's birthday party. Correct, Your Honor. If they wanted to press charges, that's exactly what they should have done. Does your client testify to that on the stand, I'd rather have gone to jail? We have not made it that far in the case, Your Honor. No, I understand. But if you get that far, that's where you're going to have to have, she'll be cross-examined. Yes, Your Honor, and I don't know what she'll say in that situation. But she was adamant, as it shows on the body cam footage, that you can't report this. This is my car. You can't report it as stolen. To go back to Judge Costa, to what you said. She could have reported it as stolen as soon as he drove away. That's what I was going to say as well, Your Honor, is in that situation where your kid's bike gets stolen, well, the police officer that's essentially showing up and then them saying, no, he hit me trying to take this bike back. This isn't this kid's bike. Arrest him for the vehicle being stolen. But instead they used that to advocate for the right to possession. I guess what strikes me about your answer to the hypothetical, even if the police did something wrong, your argument is that the private person who calls the police and enlists their help can be sued too. Under 1983. Not a private tort. Not always. Only if there's sufficient joint action. And in a situation, and joint action to facilitate, as the Supreme Court said in Soldall in 1992, joint participation arises when the authorities agree to facilitate unconstitutional acts by a private party. The status of the state case law is clear. There was a breach of the peace. That repossession has to end. Texas law only allows a peaceable. But you know what? I mean, I thought about Soldall as soon as I was reading this, but that's really not apposite because the practice there was for the police to go out with the repossessing party. Right? Yes, Your Honor. The police were, you know, involved in the repossession. I believe that is correct. I mean, there are all kinds of private torts you can bring against people, malicious prosecution, you know, state torts you can bring against private actors. It's just, it's a very rare thing to hold a private person accountable under the constitutional requirements. Yes, Your Honor. And going back to that, I believe the differentiation we're getting at here is state action by the officers versus joint action. Our opinion is the district court didn't address joint action. It made it to the point to determine whether the officers exceeded their scope by providing intervention and aid to transform it into state action and said no and never went any further than the joint action. How would you frame this question to the jury vis-a-vis McCall or Mr. Burleson? In other words, what right of the plaintiff did they violate? They violated her right to notice and a hearing before depriving her of her vehicle. The private parties operating under state law that allows, I mean, well, at the very least they'd have qualified immunity in this case because this has never been held before. Again, Your Honor, I would disagree. We think Menchaca is directly on point. While Menchaca, the facts were the opposite. Again, Menchaca is exactly what police officers, that's their job. Their job is the peacekeeping. The district court found that there was no state action. There is no, I mean, aside from all the other nuances about qualified immunity law, there is no way that you turn a finding against a party based on dicta from the court into clearly established law holding these private parties liable. But Menchaca is only distinguishable on the factual situation. I'm afraid you haven't thought through this case and you might've been better off in state court under state law, which does have provisions about how far police can go in repossessing and so on. And we do have state law claims, Your Honor. Those were dismissed because no longer no federal jurisdiction after the 1983 claims. Right. But, but again, police officer's job is exactly what they did in Menchaca. It's to keep the peace. The police officer showed up, they didn't opine on the rights. And that was, that was the reasoning there why they didn't find state action. They're, while dicta, that's why they said that they agree. The testimony failed to show such intervention and aid, but they agreed with the dissent. If the officer had said, Mr. Menchaca, you have to give over the vehicle. So you're holding the company liable because the officer said too much. We're holding the company liable for their joint action with the officers. No, all Mr. Burleson did was call the cops after he had been run over. They summoned, they summoned the police to the scene. And then once there, the reality of the state law is they can't repossess that vehicle no matter what, because of the breach of the peace. So they knew any continuation to deprive her of that vehicle, violate state law. But the officers, they enlisted the officer's help and the officers, they opined. They said, you don't own this vehicle. What's the testimony of they? I'm sorry, Your Honor. What testimony are you relying on to say they enlisted the officer's help? It's, it's the, the police reports, the police reports show that they met with them and that appellees told them she's not letting us have this car. Um, they spoke with the dealership on the phone who said no money had been paid at all. And then they just continued pressing. We are the owners of this vehicle. Um, when they were not the lawful owners of the vehicle, we have a right to take this vehicle. It's not the right. Taking that vehicle at that point, because there was a breach of the peace is, is a violation of state law. So they can't then enlist the officers who came opined and then advocated. This isn't the officers simply showing up, doing nothing and arresting her and then saying, Hey, they want you to turn over the keys and they'll drop the charges. They had already hold two different curbside courtrooms where they said, you don't have any evidence to prove you've made any payment. Sergeant Galligan uses the word evidence and they say they, their advocacy is clear. Uh, officer Froelich's report says, I officer Froelich, my partner officer, officer Nickerson and Sergeant Galligan made several attempts to convince Ms. Beeman to give up the vehicle. You can't enlist police officers to come in and advocate on your behalf for entitlement to property. That's, that's simply not how it works. And the officers weren't even going to arrest her. Initially. They're talking about, well, we could leave here. They can report it as stolen. And if you get pulled over tomorrow, you're going to get arrested for a stolen vehicle. The company or Mr. Berluson have the right to say, she, she damaged my car. They damaged this car as to which there is a dispute. They ran, they ran, she ran into Mr. Berluson. Don't they have the right to prefer charges at that point? Yes. And at that time, the police should have taken the vehicle. The police would not be able to say, fine, you can just take the vehicle as well because that again is state action deciding the vehicle. And then Sergeant Gellion used that against her because they were saying. Okay. Well, you, your red light is on and you have time for rebuttal. Your Honor. Mr. Raley. Good morning. Your Honor. May it please the court. Um, I, uh, intend to address three issues in my argument. Number one, first, whether voluntarily relinquishing the keys in the face of potential criminal charges is case dispositive. Second, whether there must be evidence of joint action or order to support a 1983 claim. It sounds like the, uh, your honors have already picked up on that issue. And did the police do anything inappropriate? And if so, what impact this had on the, um, repossession and, uh, plaintiff's claims. Now the, uh, the first issue is whether voluntarily relinquishing the keys goes back to the Myers case from the ninth circuit. And, uh, the Myers case, uh, a repossessor came onto the, uh, owner of the vehicle's property, attempted to repossess the vehicle. Uh, an altercation ensued. It became violent. Um, there were suggestions in the record that each side assaulted the other side. Um, the owner of the vehicle yelled to her father, uh, get the shotgun.  the repossessor, uh, called the police, the police came and intervened. And, uh, the police, uh, had the options. Both sides wanted to press charges against each other. So at that point, the, the police had the option of arresting both parties. There was a particularity of, of, uh, California law that requires that a police officer make an arrest when a, uh, a citizen makes a complaint or he himself or she herself could face, uh, criminal, uh, um, uh, sanctions. So the police officer in this scenario brokered a deal, uh, and, whereby the owner of the vehicle agreed that she would acquiesce in the, um, in the relinquishment of the car and that it could in fact be repossessed. And in exchange, the repossessor would agree to not press criminal charges. And that's essentially exactly what happened in, uh, the case at Barr. Miss, uh, Beeman, when she became aware that the car was being repossessed, rushed out, uh, saw that the vehicle, uh, had already been attached to the tow truck, had already been raised off the ground, jumped into the vehicle, attempted to drive off. She caused damage to the vehicle, she caused damage to the tow truck, and she, uh, injured, uh, Mr. Bishop, the, the tow truck driver. Oh, I thought it was Burleson. Yeah, it's, uh, Marcus Bishop, Your Honor. Oh, sorry. That's all right. Um, so, uh, as a result, uh, um, Miss Beeman actually requested, and this is uncontroverted, there's, uh, the only evidence in the record is that Miss Beeman requested that, um, Mr. Bishop contact the police. Mr. Bishop, Mr. Bishop did, in fact, contact the police. The police arrived on the scene, they performed their investigation, they talked to everyone involved, uh, there was certainly evidence to support Mr. Bishop's version of events. Um, there was damage to the vehicle and there was damage to the tow truck, and there were, uh, police reports notate that he had suffered a slight injury on his leg. Um, and as a result, uh, Miss Beeman ended up facing a Hobson's Choice. She could either acquiesce to the repossession, Mr. Bishop and, uh, the tow company simply told her, hey, if you will just let this all go, we will not press the criminal charges against you. How much of what you're saying is based on her pleadings and how much is based on a factual, uh, res, you know, res, uh, recitation by the district court? Well, uh, I don't know that much of it is based on her pleadings. She didn't go into a whole lot of detail about the, the controversy that arose, uh, when she discovered the repossession, but the evidence submitted by, um, uh, by the defendants, the affidavit of Mr. Bishop, uh, is also, uh, is reflected in what I'm, uh, relating to the court, but then also the evidence that was supplied by the plaintiff and her response to our motion to dismiss under 12B1 included all the police reports. So a lot of this is taken verbatim out of the police reports, um, and then also Mr., Mr. Bishop's affidavit. So that's really the kind of factual record. Just looking at her pleading, does it establish a conspiracy or concerted action? I'm sorry, I didn't catch that. Just looking at her pleading, does it establish concerted action? Well, Judge Gilmour addressed that issue. We, we made a, a, um, facial challenge, uh, under 12B1 and, and Judge Gilmour addressed that issue. And our, our point was that the pleadings were conclusory and that there was no real evidence to establish that there, uh, was any prearrangement or plan or conspiracy. Um, and, uh, and we'll stand by that, that, uh, I don't, I think that her pleadings on that basis are conclusory. I mean, I mean, a case where a private actor would be considered a state, become a state actor is when, you know, the DEA works with someone and says, okay, you're going to go in their house and you're going to look in their closet and, and bring this back. You know, you're basically deputizing a private person to do a law enforcement task. But it's almost, it's, it's at the instigation of the government to the private party. Um, here at best, I think they have a private party instigated the police to do something, which is what happens every time someone calls a police officer with a, to report a problem. Yeah, that's correct. And then the, um, you know, several of the circuit authorities that we fighted in, cited in our 28J letter that we filed, uh, on Friday, uh, reflect that as well. That's the, um, the, the Benavidez case, the Alexis case, and the Ginsburg case. You know, police officers became involved after being summoned to a scene to address an issue. The police officers then went out and took independent action and the, uh, the plaintiffs had issue with what the police officers did. But in all three of those cases, they, uh, the circuit courts found that there was simply no evidence of any concert of action. There was no prearrangement. There was no plan. There was no conspiracy. And without that, there's no way that you can hold a private actor liable under 1983. The conduct of the, the police may or may not have been wrongful, but in order for, um, a private actor to be liable, there has to be joint action. There has to be conspiracy. And there has to be, um, um, some sort of prearrangement or plan or custom in, in some circumstances. Um, but there's no evidence of any custom in, uh, in the case of Barr. So the, uh, the Myers case, um, you know, the Ninth Circuit addressed this particular issue and, uh, pointed out that, hey, there's no coercive state action on these facts. This is just simply a situation where the owner of the vehicle has found themselves in a bad spot and they have to make a choice. And it wasn't the police officer that put them in the bad spot. It was their own actions. And it was the fact that you've got a, uh, uh, a private actor on the other side who's willing to file criminal charges. And, uh, you know, that's exactly what happened in Myers. That's exactly what happened, uh, in the case of Barr. So, and, uh, the, uh, the plaintiff tried to make an argument, uh, in some of their, their briefing that the Myers case is a little bit distinguishable because of that peculiarity of California law that requires, um, you know, puts the police officer in a strange position where they either have to pursue the charges or they may, they may face some kind of, uh, criminal penalty themselves. But that really doesn't make any difference. It doesn't matter what the rationale for the decision of the police officer, uh, in deciding whether or not they're going to arrest somebody in the Myers case. It was potentially because the police officer said, well, I either have to arrest this person, even though there was ample evidence and that's reflected in the case. There was, uh, ample evidence to reflect that some, some wrongdoing had occurred. So, uh, in our case, the rationale that the, the, in the police officer's mind was that, Hey, I've investigated, I've gathered all the facts, I've called the district attorney, I've passed on all those facts to the district attorney. And the district attorney has come back to me and said, Hey, based upon what you've told me, these are the charges that we believe are supported. And the charges don't have anything to do with, um, with merely, um, protesting the repossession. They don't arise because she protested the repossession. The charges were, uh, criminal mischief and reckless assault. Because of the damage to the property and the injuries to Mr. Bishop. So all these actions were taken, you know, these, they're separate and apart from simply the repossession. Um, so just as in Myers, a deal was brokered. The, uh, Mr. Bishop, uh, and the records reflect this, the police, uh, records reflect this. Mr. Bishop repeatedly told her, Hey, just let me take the car and I won't press charges. Just let me take the car and I won't press charges. And ultimately, when push came to shove, and it was apparent that, okay, she's under arrest and she's going to be, uh, carted off to jail. She said, okay, you can take the car. And she voluntarily, uh, she told her daughter, give the keys to Mr. Bishop. And, uh, the records reflect this. Um, Ms. Beeman has not controverted that this in fact happened by filing an affidavit. And, um, and, uh, Judge Gilmore found that she voluntarily relinquished the keys. So Myers stands for the proposition that if you voluntarily relinquished the keys in the face of potential criminal charges, there can be no deprivation of any right because you volunteered to do it. All right. I looked at your district court pleading though, and you were just arguing the state action ground from what I saw, because I was wondering if you sought dismissal below on the fact that there was no constitutional violation, but. Yeah, we, uh, you're correct. Uh, Judge, I don't, I don't believe we raised that, uh, that particular issue, but it, it, it follows from the facts that were developed in, after we filed our motion. Sure, but you've got, yeah, but you've usually got to argue something below. I was surprised you didn't. All right. Uh, the second issue I want to address is the issue of joint action. And, and from the questioning that, uh, took place, uh, in, in the first part of the argument, uh, I think, uh, the, the court recognizes, uh, this issue. We cited Menchaca for the proposition that, uh, there has to be, uh, evidence of state action and there has to be evidence of, uh, concert of action, uh, some kind of prearrangement or a plan, uh, in our briefing. Um, and, uh, then subsequently we supplemented that with three additional cases, uh, um, on Friday. The Ginsburg case, the Alexis case, and the, uh, Benavidez case. In the Ginsburg case, there was a dispute that arose, uh, over a truck rental. A gentleman rented a truck from a truck leasing company. Uh, there was thought that his insurance company was going to pay for it. When he came back to return the truck, the company told him, no, that your insurance apparently is not going to pay for it. You're going to have to pay us. And, uh, a loud and, uh, vigorous disturbance arose. Apparently some foul language was used. And the, uh, the customer marched out without paying. The, um, the business was concerned that this customer was going to come back and cause additional problems. They summoned a police officer. The police officer arrived. They told the police officer what was going on and that they were just concerned that if this guy came back, there might be a, a situation and they wanted, uh, him to be aware of it. Subsequently, the police officer of his own accord went out and found the gentleman, um, and brought him back to the business and told him, hey, you need to pay these people. And, uh, the guy wrote him a check. Turned out the check bounced or he stopped payment on the check. But, um, the, uh, and then the, the gentleman subsequently brought claims against the police officer and, and affiliated governmental entities and, uh, the business and, and employees. And, um, the Second Circuit found on these facts that there must be evidence of a plan, prearrangement, conspiracy, customer policy. And they cited to the Alexis case that I'll discuss next. In order for you to state a claim against a private actor, um, there must be some concert of action, uh, as we've discussed repeatedly here. The mere fact that the business requested assistance in, uh, resolution of this payment dispute, uh, I'm sorry, the, the business did not seek, uh, assistance in the resolution of the payment dispute. The only thing they did, and the only, um, record before the court was that they called the police officer to let him know, hey, we've had this disturbance. We're concerned about a future disturbance. We just want you to be aware. The police officer at that point, of his own accord, went out and, and grabbed the customer. Um, and the officer told the plaintiff that he owed, uh, the money when he brought him back. But there was no evidence whatsoever that this was undertaken pursuant to a plan, any conspiracy, or any kind of prearrangement. And, uh, the, uh, the court said on these facts, indeed, uh, if the business can be said to have acted jointly with the police officer on these facts, a private party would be considered a state actor responsible for subsequent independent actions of a police officer whenever it legitimately calls for official assistance or protection, which is the point that, uh, that you made earlier, Judge Costa. The Alexis case is very similar. There was a altercation at a McDonald's restaurant, uh, a dispute between a customer and employees. Uh, it was loud and boisterous. The police were summoned. An officer was walking by. They asked, the manager asked him to come in. And, uh, the, uh, relayed to the officer what was going on. The officer went back and talked to the customer, came back and talked to the manager. The manager said, we want the customer to leave. The police officer went back and told, uh, told her that she, she needed to leave. She refused. The police officer went back, talked to the manager, came back, and placed the customer under arrest. And, uh, the customer sued the police officer and McDonald's and several employees, uh, for, uh, 1983 claim and for, uh, uh, uh, wrongful imprisonment and, uh, use of excessive force, things of that nature. And, the, uh, the First Circuit said, uh, explicitly, where a private individual is a defendant in a Section 1983 action, there must be a showing that the private party and the state actor jointly deprive the plaintiff of her civil rights. And, furthermore, as there is no evidence in the summary judgment record from which it could fairly be inferred that the business and the police officer had any understanding, tacit or explicit, to deprive the customer of any right secured by the Constitution or laws of the United States, we conclude that the district court correctly granted summary judgment on this Section 1983 claim. So, what they're saying is that there has to be evidence of an understanding. And, uh, in the case of Barr, there is simply no evidence of any understanding. In fact, it's the opposite. The evidence is that Mr. Bishop had no prior relationship with, um, with the police officers. He merely called them because the situation had gotten out of control. And, uh, they arrived on the scene. The police officers did what police officers do. They did their best to keep the peace. That's what Judge Gilmour found was that they did not exceed the bounds of their legitimate peacekeeping, um, uh, role. And, uh, therefore, there was no course of state action. All right. Uh, Benavidez, uh, is, uh, um, the police officers... You can count on us to read the cases. Okay. All right. I will, I will, uh, just tell you that Benavidez, again, stands for the same proposition. That if, if police officers go out and take some action, a private actor is not liable or responsible for that action unless it was performed, uh, pursuant to an agreement, uh, or, or some kind of rearrangement. All right. Many of the cases cited by the plaintiff in support of her claims reflect that there was prior contact between the, the private actors and the state actors before the incident that gave rise to the claims. And that's the Petit case, for example, the Abbott case, and the Jones case. In the Petit case, uh, there was evidence that there was prearrangement and multiple discussions between the private actor and the police before the private actor, uh, took possession of the, of the property. In Abbott, uh, the defendant prearranged with a constable to be present as she tried to take possession of the van and, in fact, paid him out of her pocket. So he was being compensated. Not only did he have a prearrangement with, uh, this person, but he was actually being comp, uh, compensated to be present. And, uh, in Jones, uh, same, same issue. The, uh, the, uh, landlord prearranged for the presence of a uniformed patrol officer when he went out to deal with his tenant. So, uh, all these cases stand for the proposition that there has to be some kind of evidence of a prearrangement or a plan. In our case, as I said, uh, there, there was no prearrangement. There was no prior contact between, um, Mr. Bishop, uh, the tow, tow company, the dealer, and, uh, the police officers who came out to the scene. Um, many of the cases cited by plaintiff, um, where it was held possible that a private actor could be liable for the conduct of a state official involved scenarios where there was a legitimate dispute about who had the right to possess the property, who, in fact, owned the property. Uh, that's the Marcus case. Uh, that was a, a 10th Circuit case out of Oklahoma which was a repossession case. Um, a repossessor came out to repossess, uh, a vehicle, um, and the owner of the vehicle came out and said, that's not the car that you've got security interest in. And so that's what the, the dispute was about. The, uh, they were repossessing the wrong vehicle. Uh, Poteet case, uh, which is a Texas state case, there was a dispute about whether the property belonged to the woman who was collecting it from her ex-fiance's house. She'd been up to the house on several prior occasions, gotten her property, and, uh, now the, um, the, the thought was that, uh, she was trying to take some of, uh, the, the plaintiff's property. So, in a, you've got these three cases where there's, there's a dispute about who's got the right to own the property. Um, in our case, there is no dispute about whether or not we were entitled to repossess it. Uh, there were, there was a security agreement. That's not in dispute. The, the, uh, security agreement was breached. The initial check was bounced. We had the right to repossess the vehicle, and that is not in dispute. Alright, the final point is, did the police do anything improper? And, the plaintiff relies on statements made by the police to the effect that the dealership still owned the vehicle, she didn't have the right to possess it, and, uh, the vehicle could be reported stolen. Well, of course, if there's no pre, uh, pre-arrangement, and there's no, uh, improper, uh, joint action, then what the police did is really irrelevant, right? Uh, you're absolutely correct, Your Honor. Not only is it, it's, there was no joint action, so we're not responsible for whatever statements they made to her. Right. But, uh, also importantly, she didn't act on any of these. I mean, the police told her, hey, you know, the vehicle belongs to them, they can take it. She said no. No, no, no, no,   Now, I want to note, repeat, Ms. Beeman has quite a backbone. The record perfectly reflects that she wasn't accepting what the police were telling her. Um, if 309, 310, and 312 in the record are where these police report statements are, but Ms. Beeman refused to work with my partner and I and requested a supervisor. I guess, I guess I thought we already established that you didn't move to dismiss on the ground that there was no constitutional violation. So why does it matter whether the police acted lawfully or not? Well, if the police did not act unlawfully, then, then they just don't have a claim. Um, sure. There's all kinds of reasons they might not have a claim, but you've got to, you've got to move for dismissal on that ground. Maybe the statute of limitations run. Maybe who knows what all the problems might be, but you have to raise that argument. Well, uh, I mean, none of this matters if there's, if there's not state action. Well, and that's, this further buttresses the point that there was no state action because even though the police may have, have given her bad information about what her legal rights were, she refused to accept it. And, uh, it ultimately ended up being of no consequence because the only reason that she ultimately gave up the vehicle was because she was facing the criminal charges. And that's the, the, the only issue. Um, and that's case dispositive under Meyers. So in sum, um, the plaintiff failed to provide any evidence whatsoever on the record before the court that there was concert of action between the police and the defendants as required by Menchaca, Ginsburg, Alexis, and Benavides, other authorities. There was no federal question. Dismissal was therefore proper. Additionally, the fact that she voluntarily... The red light's on, sir. Okay. Thank you, Your Honor. All right. Thank you. Mr. Raley, I mean, sorry, Mr. Thompson. Uh, Your Honor, first I want to collect, correct, uh, a very blatant, I think, uh, falsity. There is definitely a dispute over entitlement to the vehicle here. Um, as is clear throughout this case, Ms. Beeman said, no, I own this vehicle. The dealership, I owe them $1,000. They weren't the title holder. They weren't the lien holder. So that, that was the clear dispute here. I also want to address Myers. Myers does not stand for the proposition that handing over the keys means that there's been no state action. In Myers, importantly, the officers did not opine on lawful entitlement. They were simply put in a situation where both parties wanted to file citizen's arrest against the other. So the officer's job was to either arrest them both or face their own liability. Given that choice, they brokered a deal. Had the officers here brokered a deal, we wouldn't be here now. This isn't a similar situation. Again, those officers did not opine on entitlement to the vehicle. Here, that's exactly what the officers did. There was state action before the arrest, before Sergeant Galleon showed up. When the first officers convened their curbside court, they weighed the evidence, opined, and then advocated for appellees and said, they have the right to take this vehicle. You don't have the right to keep it. You essentially wrote a hot check. And that's the state action. The district court didn't make it down to joint action because it found the cops didn't do anything that amounted to intervention and aid. And here they did. They intervened. They held a curbside courtroom. Sergeant Galleon punishes Miss Beeman because she couldn't find on her phone. She spent 15 minutes, as noted in the police report, looking for financial information. She tells her on the body cam, if you find that you've made a payment, then you get to keep the vehicle. But she punished her for not doing this. And going back, again, there's many tests for joint action. Probably the most on-point case is a district court opinion in Brophy versus Amon. There, the employee parked behind the other vehicle while the officer showed up and said the dealer wanted the car and she'd have to leave it and then instructed her to remove her things. The district court found that was enough for joint action because they blocked the man. He ordered them to take her stuff out and opined that they had a right to it. And then he took it. Doesn't that fall under the rubric of what Mr. Raley was calling prearrangement? No, because it wasn't prearranged. The officer showed up on the scene and then made that decision. But there's no kind of dispute, right? The only dispute, the person has already prevented the plaintiff from moving the car. And that's exactly what happened here. And then brings, no, in this case, the repossession was 90% complete when the plaintiff decided to go and drive the car off the tow truck, which escalated it into a situation of assault and what was called criminal mischief. Yes, and the officers could have arrested her for that. But the repossession, like you said, even if it's 90% is not complete, which means they don't just get to finish it. Price Auto Sales versus Sanders is a Texas appellate court decision. So if they'd arrested her, why wouldn't that be, under your theory, concerted action? They did it at the behest of the private repossessors. You'd be able to sue the private people for false arrest. Had they just showed up, then we would potentially sue for false arrest because they can't report it as stolen. I agree there. But they kept advocating that they could report it as stolen when they couldn't. That's the joint action. But it doesn't have to be prearranged or a conspiracy or planned ahead of time. Well, is there any circumstance under which the plaintiff, I mean the police might be called to the scene of a repo where you're saying there would not be joint action? It sounds to me as if you're saying if the police show up at the scene of a repo, it's suddenly King's X. No, the next question becomes whether the police then intervene and aid in the repossession. So that's the question, and that's the only question the district court considered. Well, so if they investigate by saying, suppose the plaintiff says, yeah, I haven't paid for three months, and the police convene their curbside and say, well, then they probably have the right to take it, then that's joint action, right? Yes, because they would not have the right to take it there. Again, the only right to take the vehicle in this city, it isn't an unfettered right to take it. You can only take it without breaching the peace. Otherwise, this isn't a case where they just don't get the car and she keeps it forever. To me, it's a different question than whether what the police do is ultimately lawful or not. And so maybe you wouldn't have a claim. I mean, it does seem like you're saying any time they're out there just not doing anything at a repossession other than just saying, okay, you all work it out yourself. We'll leave. They should keep the peace. That's their job as peace officers is to keep the peace. The job of the court is to decide who's entitled to possession of the property. Here, that's not what they did. They didn't show up and keep the peace. They showed up, decided she didn't have entitlement, and told her she was going to. And then when she wasn't, got with appellees who decided maybe we should report this as stolen. And again, they weren't going to report it as stolen until she objected to their two different verdicts saying, you don't own this vehicle. You have to give it to them. The police reports show how they repeatedly hammer on her to convince her to give up the vehicle. That is the joint action. But again, the district court didn't address joint action. It never made it past the point of determining whether the officer's conduct, whether their intervention and aid... Your red light is on also. Thank you. All right. Thank you very much. The court will be in recess until 9 o'clock tomorrow morning.